FILED
OCT - 4 2012
Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

IN RE: REAL PROPERTY LOCATED  )  Misc. No. 12-524
AT 102 NW 7TH STREET, DELRAY  )
BEACH, FLORIDA 33444          )  UNDER SEAL
                              )

UNITED STATES' *EX PARTE* APPLICATION TO ENFORCE AND REGISTER
A FOREIGN RESTRAINING ORDER PURSUANT TO 28 U.S.C. § 2467(d)(3)
AND STATEMENT OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

Applicant United States of America, by and through its undersigned attorneys, respectfully submits this application for entry of an order pursuant to 28 U.S.C. § 2467(d)(3), as amended by the Preserving Foreign Criminal Assets for Forfeiture Act of 2010, Pub. L. No. 111-342, 124 Stat. 3607 (2010). The application seeks to enforce a foreign restraining order issued by the Amsterdam District Court in the Kingdom of the Netherlands (the "Netherlands") restraining assets in the United States in order to preserve the availability of these assets until such time as the Netherlands presents a final forfeiture judgment or confiscation order for execution in this Court in connection with the criminal prosecution of Dutch national, and U.S. resident, Raymond Chevalier ("Chevalier").

I. JURISDICTION AND VENUE

This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 2467. Venue is proper in this Court pursuant to Section 2467(c)(2)(B), which provides, in relevant part, that "venue shall lie in the district court for the District of Columbia or in any other district in which the defendant or the property . . . may be found."

II. APPLICATION

The United States is seeking an order pursuant to Section 2467(d)(3) to preserve assets

1

identified by the Netherlands in its February 25, 2011 restraining order issued by Examining Judge G.H. Markus of the Amsterdam District Court, attached hereto as Exhibit A, and to enforce that order. On March 8, 2012, the U.S. Department of Justice, Asset Forfeiture and Money Laundering Section ("AFMLS"), received a mutual legal assistance request from the Netherlands seeking enforcement of this order for the purpose of securing U.S.-based assets believed to be derived from Chevalier's criminal activity for eventual forfeiture by the Netherlands. The United States, with the appropriate certification of the Assistant Attorney General annexed hereto as Exhibit B, applies to this Court to issue a restraining order giving effect to the Dutch court's provisional measure, thus preserving assets subject to forfeiture in the Netherlands from dissipation here in the United States.

The Netherlands has requested that the United States seek restraint of the following specific asset pursuant to the February 25, 2011 Dutch restraining order: real property located at 102 NW 7th Street, Delray Beach, Florida 33444, described more particularly as Lots 1 and 2, Block 2-A, of Lake View Heights Unit 1, according to the Plat thereof, as recorded in Plat book 4, at Page 67, of the Public Records of Palm Beach County, Florida, parcel identification number 12 43 46 08 15 007 0010 (hereinafter "the Subject Property"). The Subject Property is titled in the names of Raymond Chevalier and Patricia Chevalier, Husband and Wife, and the deed to this property was recorded in Palm Beach County on February 1, 2011.[1]

The Dutch restraining order authorizes the prejudgment seizure of Chevalier's assets up to a maximum amount of €125,000 (approximately $161,250). The Netherlands has been unable to identify or locate any assets owned by Chevalier in the Netherlands. However, the

---

[1] On or about January 3, 2011, Raymond Chevalier and Patricia Favrot Chevalier purchased the Subject Property for $390,000. To finance the purchase, the Chevaliers obtained a 30-year mortgage in the amount of $270,000, which was recorded on February 1, 2011. The current estimated value of the Subject Property is $459,639.

2

Netherlands has identified the Subject Property as an asset owned in part by Chevalier in the United States and, consequently, has requested the United States enforce the Dutch restraining order against the Subject Property. The United States intends to record a *lis pendens* on the property in Palm Beach County, pursuant to Fla. Stat. § 48.23, identifying the Dutch restraining order and its limited restraint of up to €125,000. Pursuant to article 94a of the Dutch Code of Criminal Procedure, Dutch law permits the provisional seizure of an entire real property even if the defendant is only a partial owner of the real property. After the forfeiture order has become final, and the restrained real property has been sold, recovery may only be sought from the proceeds of the sale of the share of the real property owned by the defendant and only up to and including the amount authorized by any final forfeiture order.

The United States thus seeks the restraint of the Subject Property based upon the involvement of the Dutch national Chevalier, who has a beneficial property interest in it, in a fraud, embezzlement, and money-laundering scheme that is being investigated by the Amsterdam-Amstelland Regional Police (the "Amsterdam Police") and the Amsterdam Public Prosecution Service.

### III. FACTUAL BACKGROUND

The Dutch investigation has revealed that, on October 7, 2004, Chevalier and others founded the charity Child Right Fund, Nobel Prizewinners Children's Fund ("CRF"), whose mission is to promote the rights of vulnerable children worldwide. The CRF receives its funding primarily from individual and corporate donations. Between October 7, 2004 and December 1, 2006, Chevalier was the head of the CRF and a member of its board of directors. At the end of 2006, Chevalier moved to Florida to reside with his wife, Patricia Favrot Chevalier ("Favrot Chevalier").

In September 2009, the Amsterdam Police began an investigation into the possible embezzlement of CRF funds by Chevalier during his tenure as a member of its board. The investigation has revealed that, during his time at CRF, Chevalier embezzled approximately €130,000 from CRF by withdrawing cash from CRF accounts, transferring money from CRF accounts to a bank account in his name in the Netherlands, and transferring money from CRF accounts to a bank account in the name of Favrot Chevalier in Florida. The funds embezzled by Chevalier from the CRF are detailed more particularly below:

a. Between January 2005 and August 2006, Chevalier withdrew a total of €27,993.76 in cash via ATM from bank account number XXXXX1276 at ING Bank, held in the name of CRF (the "1276 CRF account"). Of that sum, €5,190 has been accounted for, and the Amsterdam Police suspect Chevalier embezzled the remaining €22,803.76;

b. Between January 2005 and August 2006, Chevalier withdrew a total of €35,950.20 in cash at ING Bank from the 1276 CRF account for his own private benefit;

c. Between January 2005 and August 2006, Chevalier made payments totaling €3,915.58 from the 1276 CRF account for his own private benefit;

d. In November 2006, Chevalier retained €2,000.00 in proceeds of the sale of a Smart car owned by the CRF;

e. On October 27, 2005, Chevalier withdrew €6,000.00 in cash at ING Bank from bank account number XXXX6517 at ING Bank, held in the name of CRF;

f. Between May 2005 and November 2006, Chevalier transferred a total of €23,641.53 from the 1276 CRF account to bank account number XXXXX7186 at Rabobank in the Netherlands, held in the name of Raymond Chevalier;

g. Between August 2005 and June 2006, Chevalier transferred a total of €28,500.00 from the 1276 CRF account to bank account number XXXXXXXXX9201 at SunTrust Bank in Florida, held in the name of Patricia Favrot [Chevalier];[2]

h. On August 14, 2006, Chevalier retained a €3,700.00 donation made on behalf of CRF; and

i. Between January 2005 and November 2006, Chevalier retained at least €4,417.18 in proceeds from the sales of merchandise on behalf of the CRF.

---

[2] The transfers were made via three international wire transfers: €9,500.00 on November 11, 2005; €8,500 on March 13, 2006; and €10,500 on June 7, 2006. This bank account was closed on March 17, 2011.

In this way, the Amsterdam Police have determined that Chevalier unlawfully obtained at least a total of approximately €130,928.25 from the CRF between January 2005 and December 2006.[3]

The Amsterdam Police's investigation has further revealed that Chevalier did not have any income during his tenure at the CRF, received no salary from the CRF, and was supported by his wife and parents during the relevant time period. Furthermore, according to the memorandum of association of the CRF, board members of the CRF may not receive any remuneration or compensation for their activities related to the CRF, although they are reimbursed for expenses incurred by them in the execution of their duties.

On July 27, 2012, the Amsterdam District Court authorized a formal criminal financial investigation (*strafrectelijk financieel onderzoek*) ("SFO") into Chevalier's criminal activity and assets, which is a separate forfeiture procedure that will conclude after Chevalier is criminally charged and convicted of the offense(s) giving rise to forfeiture under Dutch law. A copy of the SFO is attached hereto as Exhibit C. The Amsterdam Public Prosecution Service has not yet charged Chevalier in this matter, and the investigation into his suspected criminal activities remains ongoing.

### IV.    LEGAL AUTHORITY

Pursuant to 28 U.S.C. § 2467(d)(3), U.S. district courts are authorized to issue orders to preserve property during the pendency of foreign forfeiture proceedings until receipt of an enforceable final foreign forfeiture judgment. *See* Preserving Foreign Criminal Assets for Forfeiture Act of 2010, Pub. L. No. 11-342, 124 Stat. 3607 (codified as amended in 28 U.S.C. § 2467(d)(3)).[4] In issuing such an order, a district court may either rely on information from an

---

[3] The Amsterdam Police suspect that Chevalier has embezzled additional funds—perhaps as much as €73,435—from the CRF.

[4] On December 22, 2010, through the Preserving Foreign Criminal Assets for Forfeiture Act of 2010, Pub.

5

affidavit "setting forth a reasonable basis to believe property to be restrained will be named in a judgment of forfeiture" or it may register and enforce a foreign order. 28 U.S.C. § 2467(d)(3)(B). Section 2467(d)(3)(A) provides:

> [t]o preserve the availability of property *subject to civil or criminal forfeiture under foreign law*, the Government may apply for and the court may issue a restraining order at *any time before* or after *the initiation of forfeiture proceedings by a foreign nation*.

28 U.S.C. § 2467(d)(3)(A) (emphases added).

Section 2467(d)(3)(A) also requires that the U.S. restraining order be issued "consistent with subparagraphs (A), (C), and (E) of subparagraph [(d)](1) and the procedural due process protections for a restraining order under section 983(j) of title 18." 28 U.S.C. § 2467(d)(3)(A). Consequently, a U.S. district court may deny enforcement of a foreign restraining order if it finds that the order was (1) obtained without due process, (2) issued by an authority that lacked subject matter jurisdiction, or (3) obtained by fraud. In addition, the cross-references to 18 U.S.C. § 983(j) do not require that forfeiture proceedings, civil or criminal, be filed in the United States, but rather refer to actions and proceedings initiated in the foreign country. As a result, consistent with analogous procedures in a U.S. domestic civil or criminal forfeiture proceeding under Section 983(j), U.S. district courts may issue an order fashioning the appropriate relief to preserve property during the pendency of equivalent foreign proceedings. *See In re Restraint of All Assets Contained or Formerly Contained in Certain Inv. Accounts at UBS Fin. Servs., Inc. (Restraint of All Assets at UBS)*, ___ F. Supp. 2d ___, 2012 WL 1744463, at *8 (D.D.C. May 17,

---

L. No. 111-342, 124 Stat. 3607 (2010), Congress amended 28 U.S.C. § 2467(d)(3) partly in response to case law limiting courts' authority under the prior iteration of the statute to freezing assets only after a foreign court had entered a final forfeiture judgment. *See, e.g., In re Any and All Funds or Other Assets in Brown Bros. Harriman & Co. Account # 8870792 in the Name of Tiger Eye Inv. Ltd.*, 613 F.3d 1122 (D.C. Cir. 2010). As amended in late 2010, the statute now clearly authorizes courts to issue a restraining order "at any time before or after the initiation of forfeiture proceedings by a foreign nation." 28 U.S.C. § 2467(d)(3)(A)(i) (2006 & 2012 Supp.); *see also In re Restraint of All Assets Contained or Formerly Contained in Certain Inv. Accounts at UBS Fin. Servs., Inc. (Restraint of All Assets at UBS)*, ___ F. Supp. 2d ___, 2012 WL 1744463, at *3 & n.7 (D.D.C. May 17, 2012).

2012); *In re Enforcement of Restraining Order by High Court, First Instance, Hong Kong (Luan)*, Misc. No. 11-00208 (GK), Order at 3–4 (D.D.C. Apr. 4, 2012).

A prerequisite for the enforcement of a foreign restraining order is certification by the Attorney General that enforcement of the order is in the "interest of justice." 28 U.S.C. § 2467(b)(2). On March 9, 2006, the Attorney General delegated authority for the certification of orders under this provision to the Assistant Attorney General in charge of the Criminal Division of the Department of Justice. *See* Att'y Gen. Order No. 2820-2006 (May 9, 2006), attached hereto as Exhibit D.

## V. DISCUSSION

### A. The Dutch Restraining Order Meets the Requirements for Enforcement Under Section 2467(d)(3)(A).

Section 2467(d)(3) sets forth the following criteria relevant in considering a request for enforcement of a foreign restraining order: (1) whether the United States and the foreign government issuing the order are or will become parties to a formal international agreement providing for mutual forfeiture assistance; (2) whether the acts underlying the violation of foreign law giving rise to forfeiture would give rise to forfeiture under federal law if such acts were committed in the United States; (3) whether the Attorney General has determined it would be in the interest of justice to certify the order for enforcement; (4) whether the foreign order was issued consistent with due process; (5) whether the foreign authority had subject matter jurisdiction to issue the restraint; and (6) whether there is any reason to believe the foreign order was obtained by fraud.[5] The certified Dutch restraining order meets the requirements for

---

[5] It is the legal position of the United States that it need not affirmatively prove that the foreign order was issued consistent with due process, that the foreign authority had subject matter jurisdiction to issue the restraint, or that the foreign order was not obtained by fraud, before an order can issue from this Court, but rather that an affected person or entity may appear in this parallel proceeding and challenge the U.S. restraining order by making an affirmative evidentiary showing that the foreign order or process has one of these three defects.

registration and enforcement pursuant to Section 2467(d)(3), and entry of the U.S. restraining order is necessary to preserve the Subject Property for eventual forfeiture in the Netherlands.

### 1. Agreement on Forfeiture Assistance

First, the United States and the Netherlands are parties to a bilateral mutual legal assistance treaty and a supplemental agreement regarding cooperation in the tracing, freezing, seizing, forfeiting, and sharing of assets representing the proceeds and instrumentalities of crime.[6] Accordingly, the first criterion for enforcement is satisfied because the United States and the Netherlands are parties to a treaty authorizing forfeiture assistance.

### 2. Dual Forfeitability

Second, the acts underlying the violation of Dutch law which give rise to the February 25, 2011 Dutch restraining order are forfeitable offenses under Dutch law and would give rise to forfeiture under federal law if they were committed in the United States.

The Dutch restraining order is based upon Chevalier's alleged embezzlement from the CRF, including violations of article 321 (embezzlement) and 322 (embezzlement from an employer) of the Dutch Criminal Code. Both article 321 and 322 are serious crimes "for which a fine of the fifth category may be imposed," and as such give rise to forfeiture under article 36e of the Dutch Criminal Code.

The Dutch offense conduct would also satisfy a dual forfeitability standard because, if Chevalier had committed the same acts in the United States, he would have committed a criminal offense in violation of the statute prohibiting the transportation, transmission, or transfer in

---

[6] *See* Agreement Between the Government of the Kingdom of the Netherlands and the Government of the United States of America Regarding Mutual Cooperation in the Tracing, Freezing, Seizure and Forfeiture of Proceeds and Instrumentalities of Crime and the Sharing of Forfeited Assets, U.S.-Neth., arts. 2–3, Nov. 20, 1992, T.I.A.S. No. 12,482 (obligating the parties to institute provisional measures, upon request, such as freezing and seizure against property subject to forfeiture, and to enforce forfeiture orders from the requesting party); Treaty Between the United States of America and the Kingdom of the Netherlands on Mutual Assistance in Criminal Matters, U.S.-Neth., art. 1, June 12, 1981, 35 U.S.T. 1361 (obligating the parties to afford each other mutual assistance in criminal investigations and prosecutions).

interstate or foreign commerce any goods, wares, merchandise, securities or money, of the value of $5,000 or more, knowing the same to have been stolen, converted, or taken by fraud. *See* 18 U.S.C. § 2314. Such an offense gives rise to the forfeiture of proceeds under 18 U.S.C. § 981(a)(1)(C).[7]

### 3. Attorney General Certification

Third, the Dutch restraining order was certified by the Assistant Attorney General on September 11, 2012. *See* AAG Certification, Exhibit B. The Assistant Attorney General, in certifying a foreign restraining order, acknowledges that he has considered the facts of the case, the foreign law, the applicable U.S. law, and the circumstances of the judiciary from whence the order came, and has concluded that enforcement of the foreign restraining order under Section 2467 is "in the interest of justice." The Attorney General's Order of March 9, 2006, delegates authority to sign Section 2467 certifications to the Assistant Attorney General. *See* Order No. 2820-2006, Exhibit D. The Assistant Attorney General's determination is a statutory requirement and is not subject to judicial review. *See* 28 U.S.C. § 2467(b)(2) and (d)(3)(B)(ii). Thus, the third criterion for enforcement is met.

### 4. Due Process

Fourth, the Dutch restraining order was issued consistent with due process. The Amsterdam Police and Public Prosecution Service investigative operations appear to have been conducted in accordance with Dutch criminal procedure. As mentioned previously, the Dutch restraining order is a provisional measure which seeks to preserve assets for later confiscation.

---

[7] On July 27, 2012, the Amsterdam District Court authorized a formal criminal financial investigation of Chevalier based on suspected violations of articles 321 and 322 of the Dutch Criminal Code, as well as suspected violations of articles 326 (embezzlement by a manager of a charity) and 420bis (money laundering). *See* SFO, Exhibit C. The money laundering offense, if Chevalier had committed it in the United States, would be a violation of 18 U.S.C. §§ 1956 and 1957, which give rise to forfeiture in the United States pursuant to 18 U.S.C. § 981(a)(1)(A).

Prior to conviction, article 94a of the Dutch Code of Criminal Procedure states that in a case involving any suspicion of or conviction for a serious offense "for which a fine of the fifth category may be imposed," such as articles 321 and 322 of the Dutch Criminal Code, assets can be seized to secure the government's ability to forfeit the illegally obtained profits or advantages arising from such an offense. In its application to the Amsterdam District Court for the February 25, 2011 restraining order, the Amsterdam Public Prosecution Service stated both the reasons that Chevalier is suspected of committing certain felonies (embezzlement) and why it is believed that criminally derived assets exist, with a view toward eventual forfeiture under article 36e of the Dutch Criminal Code. Pursuant to articles 103 and 94a of the Dutch Code of Criminal Procedure, the Examining Judge issued the restraining order against Chevalier's assets up to and including €125,000. *See* Dutch Restraining Order, Exhibit A.

The Dutch sought the restraining order *ex parte* because there is a risk that notifying Chevalier or Favrot Chevalier before the restraining order is registered and enforced in the United States could result in the dissipation of the Subject Property. Therefore, Chevalier and his wife have not yet been given notice of the Dutch restraining order. However, as is required by article 103(2) of the Dutch Code of Criminal Procedure, the Amsterdam Public Prosecution Service intends to provide Chevalier, Favrot Chevalier, and any other interested parties, with notice of the restraining order once a *lis pendens* has been recorded on the Subject Property with the relevant recording officials in Palm Beach County, Florida. Chevalier and Favrot Chevalier then would have an opportunity to file a complaint pursuant to article 552a of the Dutch Criminal Code contesting the Dutch restraining order in Amsterdam District Court.

Additionally, on July 27, 2012, an Examining Judge authorized the formal opening of a criminal financial investigation against Raymond Chevalier pursuant to article 126 of the Dutch

Code of Criminal Procedure. *See* SFO, Exhibit C. The purpose of the SFO against Chevalier is to "determine the scale of the proceeds of the crime the suspect obtained and to seize them in accordance with section 36e of the [Dutch] Criminal Code." *Id.* While the Dutch restraining order was issued on the basis of alleged violations of articles 321 and 322 of the Dutch Criminal Code, the Amsterdam Public Prosecution Service sought and obtained an SFO based upon articles 321 and 322 as well as the additional offenses of article 323 (embezzlement by manager of a charitable organization) and 420bis (money laundering) of the Dutch Criminal Code. As such, the report submitted to the Amsterdam District Court with the Amsterdam Public Prosecution Service's application for the SFO successfully made a showing to the court of suspicion of felony activity under those four provisions of Dutch law, including the reasons Chevalier is suspected of committing those offenses.

### 5. Subject Matter Jurisdiction

Fifth, the foreign authority had subject matter jurisdiction to issue the restraining order. Under the Dutch Code of Criminal Procedure, article 103(1), an Examining Judge of the Amsterdam District Court, is the court of competent jurisdiction for the issuance of a restraining order pursuant to article 94a of the Dutch Criminal Code, and the appropriate statutory procedures appear to have been followed.

### 6. Absence of Fraud

Finally, the United States is not aware of any reason to believe that the February 25, 2011 Dutch restraining order was obtained by fraud. As such, ample justification exists for the registration and enforcement of the Dutch restraining order in the United States.

**B.   This Court Should Act to Enforce the Dutch Restraining Order by Executing a Restraining Order in a Manner Consistent with 18 U.S.C. § 983(j)(1).**

Section 2467(d)(3)(A) authorizes the U.S. district courts to enter a restraining order to

preserve the availability of property subject to either civil or criminal forfeiture proceedings under foreign law. The statute makes clear that Section 983(j) is not to be given literal application, but rather the cross-references to Section 983(j) refer to "the applicable foreign criminal or forfeiture proceedings" in the context of enforcing a foreign restraining order. 28 U.S.C. § 2467(d)(3)(A)(ii)(II)(aa); *see also Luan*, Misc. No. 11-00208 (GK), Order at 3 ("[T]he statutes do not require that the foreign country application follow any procedures or pleading requirements applicable to United States civil forfeiture filings as mandated under United States law."). The February 25, 2011 Dutch restraining order and the July 27, 2012 SFO issued by a court of competent jurisdiction marks the intention of the Government of the Netherlands to seek forfeiture, as permitted by article 36e of the Dutch Criminal Code, in connection with the criminal investigation and eventual prosecution of Chevalier. To guarantee the effectiveness of future forfeiture by the Government of the Netherlands, the Amsterdam District Court may issue provisional measures, such as the February 25, 2011 restraining order, to preserve assets that may be subject to criminal forfeiture while a criminal case is being investigated and prosecuted.

Consequently, by applying the language of Section 2467(d)(3)(A) and structures under Section 983(j)(1)(A), the Dutch restraining order—intended to safeguard assets for forfeiture—warrants this Court to issue an order to "preserve the availability of property . . . subject to forfeiture" for the duration of the foreign proceedings. *See* 28 U.S.C. § 2467(d)(3)(A) (specifying that the district court may enter a restraining order "at *any time before* or after the initiation of foreign forfeiture proceedings") (emphasis added); *see also Restraint of All Assets at UBS*, 2012 WL 1744463, at *8 (holding that Section 983(j)(1)(A) is the applicable procedure for a restraining order issued in a case in which an SFO has also been issued pursuant to Curacao law, which is derived from Dutch law). As such, this Court should recognize the Dutch

restraining order and enforce it according to its terms. These terms include authorization of the prejudgment seizure of Chevalier's assets up to an amount of €125,000. *See* Dutch Restraining Order, Exhibit A. If this Court enforces and registers the February 25, 2011 Dutch restraining order, AFMLS will record the pertinent *lis pendens* with the relevant recording officials in Palm Beach County, Florida, indicating that the Dutch restraining order authorizes the prejudgment restraint of Chevalier's assets up to and including €125,000.

## VI. CONCLUSION

For the reasons set forth above, the United States respectfully requests that this Court enforce the attached Dutch restraining order, consistent with U.S. treaty obligations under the relevant mutual legal assistance treaties between the United States and the Netherlands, *see supra* footnote 6, by entering the attached proposed order against the captioned property pursuant to this Court's authority under 28 U.S.C. § 2467(d)(3)(A) and (d)(3)(B)(ii), and 18 U.S.C. § 983(j)(1)(A). The United States will promptly provide those affected individuals and entities with notice of this proceeding and a copy of the Order, and will request, through the appropriate legal assistance channels, that those individuals and entities located outside of the United States who may have an apparent interest in the property be provided with notice and a copy of this Court's Order, should any such individuals or entities exist.

Respectfully submitted,

JAIKUMAR RAMASWAMY, ACTING CHIEF
ASSET FORFEITURE AND
  MONEY LAUNDERING SECTION

Dated: October 4, 2012    By: _____
LINDA SAMUEL (DC Bar # 388970)
Deputy Chief
A.J. DE KLUIVER (LA Bar #20163)

Assistant Deputy Chief
KATHARINE A. WAGNER (NY Bar #4798245)
Trial Attorney
Asset Forfeiture and Money
   Laundering Section
U.S. Department of Justice
1400 New York Avenue NW
Washington, D.C. 20005

Telephone:   (202) 598-2417
Fax:         (202) 616-2547

Attorneys for Applicant
UNITED STATES OF AMERICA